J-A05019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: G.M.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.A.T., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2603 EDA 2017 |

Appeal from the Order Entered July 12, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000369-2017

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY MURRAY, J.:                **FILED MARCH 13, 2018**

J.A.T. (Father) appeals from the decree that involuntarily terminated his parental rights to his daughter, G.M.T. (Child), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2) and (b) of the Adoption Act.  For the reasons that follow, we affirm.

Father and A.S. (Mother) are the biological parents of Child, born in May of 2013.  On May 21, 2015, the Philadelphia Department of Human Services (DHS) received a report alleging that Child was exposed to domestic violence and drug abuse in Mother's care.  DHS contacted Father, who indicated that he was residing in a halfway house and acknowledged his

_____

* Former Justice specially assigned to the Superior Court.

inability to care for Child.[1]  Accordingly, DHS obtained an Order of Protective Custody (OPC) for Child, and Child was placed in foster care through A Second Chance.  Child remained in foster care pursuant to a shelter care order entered on June 2, 2015.  On June 30, 2015, following the filing of a DHS petition, the trial court adjudicated Child dependent.

On March 28, 2017, DHS filed a petition to involuntarily terminate Father's parental rights to Child.[2]  The trial court conducted a termination hearing on July 12, 2017.  At the hearing, DHS presented the testimony of Tracey O'Donnell and Angienzka Feulner, the Community Umbrella Agency (CUS) case managers assigned to Father's case.  Father testified on his own behalf.  At the conclusion of the hearing, the trial court orally delivered its ruling terminating Father's parental rights.  The trial court entered its decree on that same date.  On August 11, 2017, Father filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  The trial court filed its opinion on September 19, 2017.

---

[1] On December 19, 2014, Father was sentenced to 11½ to 23 months in prison for receiving stolen property.  Father was released in May 2015 and ordered to serve five years of probation.

[2] DHS's termination petition sought to terminate the parental rights of both Mother and Father.  However, a hearing on the petition to terminate Mother's parental rights was held separately from Father, and the outcome of that hearing is not contained in the record.  Mother is not a party to this appeal, nor did she file a brief in connection with this appeal.

On appeal, Father raises the following issues for our review:[3]

1. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. § 2511(a)(1)?

2. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. § 2511(a)(2)?

3. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. §2511(a)(5)?

4. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. §2511(a)(8)?

5. Whether the [t]rial [c]ourt erred by finding, under 23 Pa.C.S.A. §2511(b), that termination of [Father's] parental rights best serves the child's developmental, physical and emotional needs and welfare?

Father's Brief at 5 (trial court answers omitted).[4]

We review an appeal from the termination of parental rights in accordance with the following standard:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an

---

[3] Father framed his issues somewhat differently in his concise statement, but we find them sufficiently preserved for our review.

[4] Although DHS petitioned the trial court to terminate Father's parental rights pursuant to Section 2511(a)(1), (2), (5), (8) and (b), the record reveals that the trial court only terminated Father's parental rights pursuant to subsections (1), (2) and (b). Accordingly, we need not address Father's third and fourth issues, which challenge the termination of his parental rights pursuant to subsections (5) and (8).

abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

"In termination cases, the burden is upon [the petitioner] to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty

- 4 -

and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court terminated Father's parental rights pursuant to Section 2511(a)(1), (2) and (b). This Court need only agree with the trial court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Accordingly, we focus our analysis on Section 2511(a)(2) and (b), which provides as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence that the following three conditions are met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003); 23 Pa.C.S.A. § 2511(a)(2). The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

In granting DHS's petition for involuntary termination, the trial court made the following determination:

> This [c]ourt heard credible evidence regarding Father's lack of capacity to perform parental duties, and [he] is incapable of providing essential care which is necessary for the Child's physical and mental well-being. Both [c]ase [m]anagers . . . testified Father repeated [sic] failed to comply with the supervised visits with the Child, making excuses that he worked a lot of overtime. They both stated Father also made constant references to the positive drug screens being tainted and alleging he was allergic to cotton and could not submit to swabbing for drug detection. Father failed to present current, valid prescriptions for his alleged prescribed use of drugs, and

> also failed to produce evidence to corroborate his employment, and housing.

Trial Court Opinion, 9/19/17, at 19-20.

The certified record reveals that Father's actions and inaction have resulted in Child being without essential parental care, and Father has failed to remedy the conditions that caused the incapacity within a reasonable time. DHS established the following objectives for Father: obtain suitable housing; participate in a drug and alcohol outpatient program; attend parenting classes; attend the Achieving Reunification Center (ARC) for services; obtain stable employment; and participate in weekly family visits with Child.

Ms. O'Donnell, the case manager assigned to Father's case from May 2015 through July 2016, testified that Father had a history of drug and alcohol abuse. N.T., 7/12/17, at 11. Ms. O'Donnell stated that she referred Father to three different drug and alcohol treatment programs while assigned to his case, but Father failed to complete any of the programs. *Id.* at 12. Notably, Ms. O'Donnell testified that while Father would initially participate in the programs, Father would eventually quit because "they weren't working with him or he didn't like that place, or they couldn't work with his work schedule. He would take drug tests at the drug and alcohol places [and] he said that they tainted his drug and alcohol and he wanted to go to a different place." *Id.*

Further, Ms. O'Donnell testified that she regularly requested that Father submit to random drug screens. Father complied only once and tested positive for alcohol and benzodiazepines. *Id.* at 12-13. Ms. O'Donnell testified that Father was unable to secure appropriate housing and would not cooperate with the service providers assigned to his case. *Id.* at 17. Notably, Father refused to sign releases for information and behaved aggressively towards service providers. Moreover, Ms. O'Donnell testified that Father attended at least one visit under the influence of drugs. *Id.* at 21.

Likewise, Ms. Feulner, Father's CUA case manager from August 2016 to the time of the hearing, testified that Father failed to complete his drug and alcohol programs. Ms. Feulner indicated that Father was under the influence of illicit substances during visits in August 2016, October 2016, November 2016 and January 2017. *Id.* at 33-34. Further, she testified that Father was minimally compliant in attending visits with Child, noting that of the 23 visits that were offered to Father, Father attended 11 visits, of which he was late for five, and failed to appear for 12 visits. *Id.* at 34.

Additionally, in January 2017, Father was arrested for aggravated assault, robbery, possession of an instrument of crime, auto theft by unlawful taking, and receiving stolen property. Father remains incarcerated and was scheduled for trial in December 2017. *Id.* at 50; DHS Exhibit 5.

Based on the foregoing, we reject Father's assertion that the trial court erred in terminating his parental rights based on his efforts to fulfill the objectives set forth by DHS. Therefore, we discern no abuse of discretion or error of law in the trial court's determination that termination was warranted under Section 2511(a)(2).

We next consider whether the orphans' court erred or abused its discretion by terminating Father's parental rights pursuant to Section 2511(b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (citations and quotation marks omitted).

In addressing the best interests and welfare of Child, the trial court found:

> Both [c]ase [m]anagers presented credible and convincing testimony regarding the lack of a parental bond between the Father and the Child, and both opined it would be in the best interest of the Child to terminate Father's parental rights. They provided testimony of a loving bond that exists between the Child and her foster parents. The Child looks to them for safety, care, and for all her needs. Father has seen the Child [rarely during] the last two years, and claims it is all because he was incarcerated. However, the record shows otherwise. Both [c]ase [m]anagers opined that the Child would not suffer irreparable harm if Father's rights were terminated and that termination of Father's parental rights and adoption would be in the best interest of the Child. This [c]ourt agrees with their credible testimony and finds Father's testimony incredible.

Trial Court Opinion, 9/19/17, at 21.

Initially, Father argues that the trial court erred in terminating his parental rights because DHS did not make reasonable efforts to reunify him with Child, "which was something he desired and was willing to do." Father's Brief at 15. When reviewing a termination decree on appeal under Section 2511(a)(2), we do not consider whether DHS made reasonable efforts. Notably, our Supreme Court has rejected the argument that the provision of reasonable efforts by the county children's services agency is a factor in termination of the parental rights of a parent to a child. *See In the Interest of: D.C.D., a Minor*, 105 A.3d 662, 673-74, 676 (Pa. 2014) (rejecting the suggestion that an agency must make reasonable efforts to reunify a child with their parent prior to the termination of parental rights pursuant to Section 2511(a)). Thus, based on our Supreme Court's holding

- 10 -

in *In the Interest of: D.C.D., a Minor*, we find no merit to Father's argument.

Moreover, the record supports the trial court's finding that Child's primary bond is with her foster parents, rather than Father. Both case managers testified that Child refers to her foster parents as "mommy" and "daddy." N.T., 7/12/17, at 19, 35. Further, the record supports the trial court's finding that Child will not suffer irreparable harm if Father's parental rights are terminated. *Id.* at 20, 37. It was within the trial court's discretion to accept the testimony of the CUA case managers, and to conclude that the benefits of a permanent home with her foster parents would outweigh any emotional distress Child might experience if Father's parental rights were terminated.

While instantly Father may profess to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (citation omitted).

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Father's parental rights under 23 Pa.C.S.A. § 2511(a)(2) and (b). Where the trial court's determination is supported by the record, this Court must affirm. *See In re R.L.T.M.*, 860 A.2d 190, 191 (Pa. Super. 2004).

Decree affirmed.

P.J.E. Stevens joins the memorandum.

Judge Dubow did not participate in the consideration or decision of the case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/18